1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

11   COPASETIC CLOTHING LTD., a          Case No.:  17-CV-02300-GPC-KSC
     Canadian company, and ROOTS OF,
12   INC., a California corporation,         **ORDER DENYING IN PART AND**
13                                           **GRANTING IN PART**
                         Plaintiffs,         **DEFENDANT'S MOTION TO**
14                                           **DISMISS WITH LEAVE TO AMEND**
     v.
15                                           [ECF No. 8]
     ROOTS CANADA CORPORATION,
16
                         Defendant.
17

18          Presently before the Court is Defendant Roots Corporation ("Roots")'s June 7, 2018

19   motion to dismiss the complaint filed by Plaintiffs Copasetic Clothing Ltd. and Roots Of,

20   Inc. (collectively "Plaintiffs").  (ECF No. 8.)  Plaintiffs filed an opposition on July 6, 2018

21   and Roots filed its reply on July 20, 2018.  (ECF Nos. 15, 16.)  Pursuant to Civil Local

22   Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument.

23   For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss in part

24   and **DENIES** the motion in part, and **GRANTS** Plaintiffs leave to amend their complaint.

25   //

26   //

27

28
                                          1

## I. BACKGROUND

Copasetic Clothing Ltd., a Canadian company, filed fourteen applications (the "Copasetic Applications") with the U.S. Patent and Trademark Office ("USPTO") seeking to register marks containing the words "ROOTS OF" with respect to various articles of clothing and accessories. (ECF No. 1, at 1–5.) Copasetic intends these marks to be used by Roots Of, Inc., its wholly-owned subsidiary, which is incorporated in California. (ECF No. 15, at 10.) Roots Of is the exclusive licensee of all of Copasetic's trademarks, which include Copasetic's two already-registered design marks bearing the words "BLOODLINES ROOTS OF FIGHT." (ECF No. 1, at 1–2.) Roots Of has manufactured and distributed Copasetic's "ROOTS OF" product line within the United States for approximately six years. (ECF No. 15, at 6, 10).

After the USPTO published the Copasetic Applications in mid-2016, Defendant Roots Corporation lodged Notices of Opposition to Copasetic's pending applications with the Trademark Trial and Appeal Board ("TTAB"). Roots claimed that registration of Copasetic's marks would confuse, mislead, and deceive consumers to believe that goods bearing Copasetic's marks were affiliated with or endorsed by Roots, which has maintained a number of registered U.S. trademarks (incorporating the word "ROOTS" in connection with clothing, footwear, and other accessories) since its inception in Canada in the 1970s. (ECF No. 8-5, at 10; ECF No. 8-6, at 10.)

Prior to filing its oppositions, Roots, through counsel, sent Copasetic a demand letter on September 12, 2016 which asked Copasetic to withdraw its applications; it also gave notice of Roots's intent to "file formal opposition proceedings" if its demand was not fulfilled. (ECF No. 8-3, at 2.) The letter further advised that Roots would be amenable to a "reasonable phase-out period" for Copasetic to "cease use" of marks on goods which Roots believed were "identical" to goods offered under the Roots marks. (*Id.*) The parties continued to communicate after Roots instituted formal opposition proceedings before the TTAB, and on February 9, 2017, Roots sent a letter to Copasetic reaffirming Roots's intent

17-CV-02300-GPC-KSC

to "vigorously oppose your trademark applications," and sought "an explanation of how (and where) [Copasetic] is currently using the 'Roots' marks [and] what its plans are for future use." (ECF No. 15-3, at 3.)

Plaintiffs filed a complaint alleging a reasonable apprehension of an imminent trademark infringement suit from Roots. They bring the present action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.*, seeking, *inter alia*, a declaration that Copasetic's registered marks, as well as its applied-for marks, do not infringe on any of the marks owned by Roots. (ECF No. 1, at 21). Relatedly, they also seek a declaration that Copasetic has the right to use and register the marks claimed in the Copasetic Applications. (*Id.* at 21–22.) At the time the complaint was filed, Plaintiffs were using the contested "ROOTS OF" marks in connection with their official website and social media account. (*Id.* at 12–13.)

Roots, on the other hand, has moved to dismiss the Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and in the alternative, Fed. R. Civ. P. 12(b)(6), for failure to state a claim. Specifically, Roots claims that Plaintiffs have failed to allege an "actual case or controversy" under the Declaratory Judgment Act. (ECF No. 8, at 2.) Roots also asserts that Roots Of, in particular, has no standing to pursue declaratory relief, and protests that Plaintiffs did not properly name it in the complaint.

## II. LEGAL STANDARD

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction," federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Such relief is granted at the discretion of the district court, *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982), and a two part-analysis guides the Court's exercise of DJA jurisdiction.

The Court "must first inquire whether there is an actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005);

*accord Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). "Second, if the court finds that an actual case or controversy exists, the court must decide whether to exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), and its progeny." *Id.*

### a. Case or controversy requirement

The requirement that a case or controversy exist under the Declaratory Judgment Act is a matter of subject matter jurisdiction. *See Principal Life Ins. Co.*, 394 F.3d at 669. The jurisdictional language in the DJA is "identical to Article III's constitutional case or controversy requirement." *Kearns,* 15 F.3d at 143. A case or actual controversy exists when the dispute is "'definite and concrete,'" and can be addressed by "'specific relief through a decree of a conclusive character.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)). Thus, the facts alleged must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Trademark disputes involving claims for declaratory relief are justiciable under the above rubric when the plaintiff has a "real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co. Inc.*, 655 F.2d 938, 944 (9th Cir. 1981). That is to say, declaratory judgment plaintiffs need not show "an actual threat of litigation" to prove the existence of a case or controversy. *Id.* While any apprehension of suit "must have been caused by the defendant's actions," the inquiry under the real and reasonable apprehension test "focuse[s] upon the position and perceptions of the plaintiff." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555–56 (9th Cir. 1989). As such, "[t]he acts of the defendant [are] . . . examined in view of their likely impact on competition and the risks imposed upon the plaintiff." *Chesebrough-Pond's*, 666 F.2d at 396. Further, "if the

4

plaintiff is engaged in the on-going production of the allegedly patented item, the showing of apprehension 'need not be substantial.'" *Hal Roach*, 896 F.2d at 1556 (quoting *Societe*, 655 F.2d at 944).

### b. Discretionary considerations

Even assuming the existence of a case or controversy, the DJA requires further analysis in connection with the district court's discretion. *See Principal Life Ins. Co.*, 394 F.3d at 672. The Supreme Court, in *Brillhart,* and the Ninth Circuit, in *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998), have identified a number of prudential factors for the Court to consider in deciding whether to exercise jurisdiction. Pursuant to those decisions, "district court[s] should . . . discourage litigants from filing declaratory actions as a means of forum shopping" and "avoid duplicative litigation." *Id.* Also relevant is "whether the declaratory action will settle all aspects of the controversy," "whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage," and "the availability and relative convenience of other remedies." *Id.* at 1225, n.5 (quoting *Kearns*, 15 F.3d at 145 (Garth, J., concurring)).

### c. Rule 12(b)(1)

Plaintiffs, as the party seeking to invoke jurisdiction, have the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may challenge the plaintiff's assertion of jurisdiction in one of two ways. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). In such a case, the district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6). *Id.*

"By contrast, in a factual attack, the challenger disputes the truth of the allegations

5

that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *See Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "[T]he plaintiff must support [his or] her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Leite*, 749 F.3d at 1121 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)). Thus, "the court need not presume the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242.

Roots's motion to dismiss mounts both types of jurisdictional challenges.

## III.    Facial Attack on Jurisdiction as to Roots Of

Roots urges the Court to dismiss Roots Of as a plaintiff for lack of standing and for failure to state a claim under the DJA. Although Roots has couched its request in terms of both Rule 12(b)(1) and 12(b)(6), its arguments for dismissal are premised on a single contention: that the Plaintiffs' complaint does not allege an "actual case or controversy" between Roots and Roots Of. (ECF No. 8, at 16).

Roots's makes a two-pronged argument. First, Roots mounts a facial attack on jurisdiction by claiming that the facts as alleged in the complaint fail to establish Roots Of's standing to bring a claim under the DJA. (*Id.* at 17). In the second part, Roots claims a factual deficiency with respect to jurisdiction because "there is no basis on which Roots Of could believe that it will be the subject of a trademark infringement action brought by Roots—*i.e.*, there cannot possibly be an actual case or controversy between Roots and Roots Of." (*Id.* at 18.)

With respect to the facial challenge, Roots asserts that the facts alleged in Plaintiffs' complaint are insufficient on their face to establish standing for Roots Of to bring a

6

declaratory judgment suit against Roots.[1] Roots points out that Roots Of's alleged involvement in the present dispute appears only once in the complaint and observes that the complaint fails to allege the existence of a case or controversy arising between Roots Of and Roots. (*Id.* at 17.) The Court agrees that the complaint only asserts a reasonable apprehension of infringement liability by Copasetic, and a case and controversy between Roots and Copasetic. (ECF No. 1, at 1, 6, 20, 21.) Because the case and controversy requirement is indispensable to this Court's subject matter jurisdiction (both as a matter of Article III standing and as a matter of DJA jurisdiction), the DJA claim of Roots Of cannot proceed. *See S. California All. of Publicly Owned Treatment Works v. U.S. Envtl. Prot. Agency*, 297 F. Supp. 3d 1060, 1067 (E.D. Cal. 2018) ("In the cases of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction."). As a consequence, this Court finds the facial attack meritorious and GRANTS the motion to dismiss Roots Of's action.[2]

When a court dismisses a complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citations and quotation marks omitted). The Court concludes that the facial deficiencies in the complaint can be cured and grants Roots Of leave to amend the complaint. *See Lim v. Helio, LLC*, No. Cv 11-0183 PSG (AGRx), 2012 WL 1288440, *1 (C.D. Cal. 2012) (granting leave to amend after dismissal under

---

[1] The Court resolves a facial attack "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121.

[2] Dismissal of Roots Of's DJA claim pursuant to the facial attack obviates any need for the Court to opine on the merits of the factual attack.

Rule 12(b)(1) because the plaintiff had not previously amended her complaint).

## IV.    Factual Attack on Jurisdiction as to Copasetic

On the other hand, Roots's challenge as to this Court's jurisdiction over Copasetic's[3] DJA claim is factual.  This is because Roots disputes Copasetic's contention that it had a reasonable and real apprehension of a trademark infringement suit, and because Roots introduced extrinsic evidence in support of its motion.  *Leite*, 749 F.3d at 1121 (noting that factual attacks "contest[] the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings").  By submitting a declaration from its general counsel, Kaleb Honsberger, in conjunction with its motion to dismiss, (ECF No. 8-1) Roots mounted a factual attack that obligated Plaintiffs to respond by "furnish[ing] affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2.  Plaintiffs did in fact oppose Roots's motion to dismiss with a declaration from Ana Claudia Guedes, their outside general counsel.  (ECF No. 15-1.)

Because in this case "the existence of jurisdiction turns on disputed factual issues," the Court "may resolve those factual disputes itself." *Leite*, 749 F.3d at 1121–21.

### a.  Case or controversy requirement

#### i.  TTAB Notices of Opposition

It is well-established that the bare filing of an opposition before the TTAB, without more, does not a DJA case or controversy make.  *See Chesebrough-Pond's*, 666 F.2d at 396 ("[A] simple opposition proceeding in the Patent and Trademark Office generally will not raise a real and reasonable apprehension of suit.").  However, DJA jurisdiction may lie—based on the allegations contained in TTAB materials alone—where the defendant's opposition articulates the prima facie elements of trademark infringement.  *See Whole E*

---

[3]    To be precise, Roots's factual attack on jurisdiction was levied against both Plaintiffs jointly. However, because this Court has found dismissal of Roots Of's DJA claim to be proper pursuant to Roots's facial challenge, the analysis in this part refers only to Copasetic's DJA claim.

8

*Nature, LLC v. Wonderful Co., LLC*, No. 17cv10-LAB(KSC), 2017 WL 4227150, *2 (S.D. Cal. Sept. 22, 2017). Indeed, when viewed from the perceptions of the plaintiff, a TTAB opposition expressed in the clear terms of trademark infringement could amount to a credible threat of an impending infringement suit.

For example, the district court in *Neilmed Prod., Inc. v. Med-Systems, Inc.*, found subject matter jurisdiction in a case based on the substance of a notice of opposition which alleged "striking[] similar[ity]" between the marks at issue, "widespread actual confusion in consumers," and an effort by plaintiff to "intentionally and willfully deceive the public and free ride on [Defendant's] good will." 472 F. Supp. 2d 1178, 1181 (N.D. Cal. 2007) ("Defendant in this case invoked the language of trademark infringement and dilution, which could give Plaintiff a reasonable apprehension that Defendant would sue Plaintiff if Plaintiff continues to use its Sinus Rinse mark."). In another case, the district court determined that a "substantial controversy" existed where the defendant had "invoked the language of trademark infringement,"—i.e., a similarity between marks and a likelihood of confusion—in its notices of opposition. *Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, No. SACV 12-572 JVS (Ex), 2012 WL 2951924, *3 (C.D. Cal. 2012).

This Court finds that the notices of oppositions filed by Roots in response to Copasetic's Applications gave Copasetic a real and reasonable apprehension of being sued for infringement. Like the notices reviewed in *Neilmed* and *Active Sports*, the oppositions in this case alleged elements of trademark infringement under the Lanham Act. *See* 15 U.S.C. § 1114(1)(a) (prescribing civil liability for "use in commerce" of a registered mark which "is likely to cause confusion"). As Roots admits, its "first Four Notices of Opposition state that Copasetic's marks were 'very similar' to Roots's marks and that as a result, registration of Copasetic's marks in connection with clothing that is identical to that offered by Roots will cause consumers to think that Copasetic or its goods are 'connected with or sponsored by Roots.'" (ECF No. 8, at 12.) Those notices also maintain that registration of the Copasetic Marks "is likely to cause confusion with and dilute Opposer's

Roots Marks for identical goods." (*See, e.g.*, ECF No. 8-6, at 13.) There is no distinction between Roots's oppositions and the ones determined to give rise to a case and controversy in *Neilmed* and *Active Sports*.

Roots, however, argues that its TTAB oppositions could not inspire a reasonable apprehension of an infringement suit because they "focus on the fact that '*[r]egistration* of,' Compasetic's marks—as opposed to use—would 'likely dilute the distinctive quality of' the Roots trademarks." (ECF No. 8, at 12.) For this proposition, Roots relies primarily on a number of out-of-circuit dispositions which have disclaimed DJA jurisdiction based on a distinction between opposition notices aimed at challenging "attempted registration," rather than "use" of marks. *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 395 (S.D.N.Y. 2011); *see also Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 CIV 7352(JGK), 2010 WL 3629592, *5 (S.D.N.Y. Sept. 16, 2010) (finding no justiciability "where the defendants do not object to the plaintiff's current *use* of its mark, and the only immediate and definite controversy is over the *registration* of that mark") (emphases added).

Roots's attempted reliance on *Vina Casa* and *Bruce Winston* is unavailing for two reasons. First, those cases are inapposite because Roots's notices of opposition articulated a challenge not only to the "registration" of the Copasetic marks, but also as to their "use" and "promotion" by Copasetic. (ECF No. 8-4, at 10.) Indeed, Roots averred that Copasetic's "goods are and/or will be marketed, promoted and offered through the same marketing channels" as the goods offered by Roots under its marks. (*Id.* at 9.) As a consequence, Roots cannot credibly claim that it sought only to challenge registration. Second, it must be stressed that Ninth Circuit caselaw constrains this Court to conduct the jurisdictional inquiry "with a flexibility 'that is oriented to the reasonable perceptions of the plaintiff.'" *Hal Roach*, 896 F.2d at 1556 (citing *Chesebrough-Pond's*, 666 F.2d at 396). Thus, the Court is not so much concerned with Roots's characterization of what it intended vis-à-vis its notices of opposition (i.e., to raise an objection only as to registration) as it is

with the reasonable perception by Copasetic of the implication of Roots's oppositions (i.e., to have portended a claim of trademark infringement as to use). The Court concludes that the inference drawn by Copasetic from Roots's opposition notices were not unreasonable in view of the language contained therein.

### ii. Demand Letters and Ongoing Communications

This Court's determination of justiciability is additionally supported by the communications the parties exchanged beyond the four corners of the opposition notices. "District courts have consistently held that a combination of TTAB opposition proceedings and infringement-alleging language in cease and desist letters is enough to establish a reasonable apprehension of litigation." *Homie Gear, Inc. v. Lanceberg Holdings, LLC,* No. 16CV1062 BTM (DHB), 2016 WL 6804611, *3 (S.D. Cal. Nov. 16, 2016); *see also Chesebrough-Pond's*, 666 F.2d at 396–97 (holding that it is "reasonable to infer . . . a threat of an infringement action" from a letter that stated "a prima facie case for trademark infringement" and was sent "declaring [an] intent to file opposition proceedings"); *FN Cellars, LLC v. Union Wine Co.*, No. 15-cv-2301-JD, 2015 WL 5138173, 3 (N.D. Cal. Sept. 1, 2015); *E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 F. App'x 632, 635 (9th Cir. 2014) (finding subject matter jurisdiction where the plaintiff's supplier received a "demand that all distribution of the Camarena bottle cease on the grounds that the Camarena and 1800 bottles were confusingly similar").

The letter Roots sent to Copasetic on September 12, 2016 advised of Roots's intent to file opposition proceedings against Copasetic's "identical" marks and indicated that Copasetic should "cease use" of any articles bearing the "Roots of Fight" mark. (ECF No. 8-3, at 2) ("In the event that your client has an inventory of produced clothing bearing the mark Roots of Fight my client is agreeable to a reasonable phase-out period to cease use.") Critically, the Roots of Fight mark identified by Roots for phase-out were not limited to the pending Copasetic marks; they also implicated the marks already owned and registered by Copasetic in connection with its "ROOTS OF" products. (*See* ECF No. 1, at 1–2

(displaying the two marks registered by Copasetic in 2014 and 2015)).  By asking Copasetic to cease use of its Roots of Fight mark and to clear out any "produced clothing," Roots likely gave Copasetic the impression that it was seeking to challenge not only Copasetic's use of its pending marks, but also its prior use of any marks already registered with the USPTO.  This demand letter gave Copasetic a reasonable apprehension of imminent suit.

Roots's February 9, 2017 letter only compounds the reasonableness of Copasetic's apprehension of litigation.  That letter re-emphasized Roots's intent to "vigorously oppose [Copasetic's] trademark applications for Roots-formative marks."  (ECF No. 15-3, at 3.) It also requested "an explanation of how (and where) [Copasetic] is currently using the 'Roots' marks [and] what its plans are for future use."  (*Id.*)  It is reasonable to read the letter as implying Roots would pursue an infringement action based on prior and future use, especially in light of Copasetic's counsel's declaration that ongoing discussions between Copasetic and Roots had "focused on use rather than registration."  (ECF No. 15, at 5 (citing ECF No. 15-1, at 2).)  The timing of this second letter likely exacerbated Copasetic's apprehension of suit.  Since opposition proceedings had already been instituted, the explanation sought by Roots—as to current and future use—could reasonably be perceived as relevant only to a lurking claim of infringement.

Moreover, on June 16, 2017, Roots proposed a settlement agreement that sought to impose a number of restrictions on Copasetic's use of its marks.  (ECF No. 15-4, at 2–3). That draft agreement provided, *inter alia*, that "Roots [would] agree[] not to challenge or contest Copasetic's right to use the terms 'roots'" so long as Copasetic agreed to "not use the word 'roots' prominently on any clothing item but only as the label or brand name on a hang tag or collar tag," "not use or attempt to register the term 'roots' as part of a corporate name or trade name," and "not use or seek to register the term 'roots' in connection with leather goods . . . ."  (ECF No. 15-4, at 3.)  Although Roots's proposal ostensibly left some avenues of coexistence open, the terms and conditions suggested

would have severely, if not completely, restricted Copasetic's ability to use any "ROOTS OF" marks, or to persist with Roots Of as the company name of its subsidiary. *Cf. Delphix Corp. v. Embarcadero Techs., Inc.*, No. 16-cv-00606-BLF, 2016 WL 4474631, *4 (N.D. Cal. Aug. 25, 2016) (actual and justiciable controversy arose where defendant's counsel repeatedly asserted that "settlement would require Delphix [the plaintiff] to cease use of its existing DELPHIX company name, and either cease use of or substantially limit its current use of its DELPHIX trademark").

Accordingly, Copasetic has demonstrated a "reasonable apprehension of litigation," especially when the facts are viewed through the "more lenient standard used when the allegedly infringing mark is in incurrent use." *Whole E Nature*, 2017 WL 4227150, at *3 (citing *Societe*, 655 F.2d at 944). Because the circumstances of this case, taken as a whole, show a substantial controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *MedImmune*, 549 U.S. at 127, the Court determines that it may exercise DJA jurisdiction over Copasetic's claim.

### b. Discretionary considerations

The second part of the jurisdictional inquiry under the DJA obligates this Court to determine whether—in light of a present case or controversy—it *ought* to exercise its jurisdiction under the factors enumerated in *Brillhart* and *Dizol*. Balancing the "'concerns of judicial administration, comity, and fairness to the litigants,'" this Court concludes that there is little reason for this Court to decline jurisdiction over Copasetic's suit. *Kearns*, 15 F.3d at 144 (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)).

Roots argues that Copasetic filed the instant action as an attempt to circumvent the procedures of the TTAB, which, if successful, would amount to forum shopping and procedural fencing. (ECF No. 8, at 15–16.) It also argues that Copasetic should be made to await the TTAB determination, since the TTAB was not only Roots's chosen forum, but also the forum that would be the more streamlined, appropriate channel to resolve the

registration dispute between the parties.  (*Id.*)

Roots is, in effect, inviting the court to apply the doctrine of primary jurisdiction as a basis for declining to hear the case.  Under that doctrine, "When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved."  *See United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003).  The Ninth Circuit, however, has rejected the pendency of a TTAB proceeding as a proper basis to forestall an action for declaratory relief in a factually similar case.  *See Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1162 (9th Cir. 2007).  *Rhoades* controls the outcome in the present matter.

The *Rhoades* court recognized that deferral of a declaratory judgment case is generally appropriate where "the district court action involves only the issue of whether a mark is entitled to registration."  *Id.* at 1165.  In such a case, "the benefits of awaiting the decision from the PTO would rarely, if ever, be outweighed by the litigants' need for a prompt adjudication."  *Id.* at 1163 (quoting *Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848, 853 (2d Cir. 1988)).

However, that calculus changes if the action before the district court concerns not only the registration of a mark, but also a dispute over the existence *vel non* of infringement.  Where, "as here, a potential infringement claim 'requires the district court to resolve much or all of [the registration issues], it would waste everyone's time not to settle the registration issue now[, in district court.]'"  *Id.* at 1165 (quoting *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 81 (1st Cir. 1996)).  Indeed, when "there is a potential infringement lawsuit, federal courts are particularly well-suited to handle the claims so that parties may quickly obtain a determination of their rights without accruing potential damages."  *Id.* at 1164.  The appropriateness of declaratory relief under these factual predicates rests on several considerations comporting with the *Brillhart* and *Dizol* factors.

First, exercising declaratory judgment would have the advantage of "settl[ing] all

aspects of the controversy" between the parties. *Dizol*, 133 F.3d at 1225 n.5. This is because, "unlike a federal district court, the [TTAB] cannot give relief for an infringement claim," *Rhoades*, 504 F.3d at 1163 (quotations, international citations, and brackets omitted), and "is empowered to determine only the right to register a federal trademark." Trademark Trial and Appeal Board Manual of Procedure § 102.1. As a result, a "declaratory action is preferable to a TTAB action for addressing 'all aspects of the controversy' between the parties, because the TTAB cannot address a trademark non-infringement claim." *FN Cellars*, 2015 WL 5138173, at *4.

Second, the "availability and relative convenience of other remedies" also weighs in favor of declaratory judgment. *Dizol*, 133 F.3d at 1225 n.5. This is because "Congress has not installed the PTO as the exclusive expert in the field" and because "parties may litigate these issues in federal court without previously exhausting their claims before the TTAB." *Rhoades*, 504 F.3d at 1164. Indeed, because TTAB decisions are "not entitled to deferential review," and are instead challengeable by "bringing a proceeding in district court," *Whole E Nature*, 2017 WL 4227150 at *3 (citing *Rhoades*), it cannot be said that TTAB proceedings are more efficient or convenient for either party involved.

Because the declaratory judgment sought by Copasetic, like that in *Rhoades*, involves not only a dispute as to the registrations pending before the TTAB, but also a "potential infringement lawsuit," it is proper for this Court to follow *Rhoades* and exercise its discretion in favor of jurisdiction. Despite Roots's contestations otherwise, it cannot be said that Plaintiffs's filing of the federal suit can be deemed evidence of forum shopping procedural fencing, or an attempt to seek a *res judicata* advantage. *See Neilmed*, 472 F. Supp. 2d at 1182 (noting that "the mere commencement of federal litigation does not constitute forum-shopping or procedural fencing, however expensive litigation might be"). On the contrary, in light of the parties' entitlement to seek review of any TTAB decision in district court, Plaintiffs' request for declaratory judgment "suggests rather a motive to streamline the process." *Whole E Nature*, 2017 WL 4227150, at *3.

17-CV-02300-GPC-KSC

Consistent with *Rhoades*, this Court holds that "the belief in the TTAB's superiority as a forum is an inappropriate reason to decline to entertain a declaratory relief action." *Id.* at *4. The Court therefore exercises its discretion in favor of hearing the DJA claim raised by Copasetic.

## V.    Naming the correct defendant

Roots also seeks to dismiss the complaint in its entirety because the complaint incorrectly names "Roots Canada Corporation,"—as opposed to "Roots Corporation,"—as the defendant. The Court need not take so drastic a measure.

Pursuant to Rule 15(a)(2), this Court should grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). "Absent prejudice, or a strong showing" of undue delay, bad faith, dilatory motive on the part of the movant, or repeated failure to cure deficiencies by amendments previously allowed, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."[4] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In this respect, "the crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

It is apparent that Roots would not be prejudiced by such a ruling. After being notified of the filing of the complaint, Roots agreed to provide a waiver of service, notwithstanding the discrepancy in the corporate name alleged in the complaint. (ECF No. 5.) Thereafter, Roots filed a Notice of Party With Financial Interest, identifying Roots

---

[4]    Although Plaintiffs did not file a motion to amend their complaint, the absence of a formal motion to amend does "not preclude the district court from granting leave to amend." *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 & n.2 (9th Cir. 1990) (construing plaintiff's opposition to defendant-employer's motion for summary judgment as a motion to amend where the plaintiff's opposition memorandum "noted confusion over the appropriate name of [her] employer," which was OPC, and not OCC, as originally pleaded in the complaint).

Plaintiffs' opposition memorandum, which concedes their technical mistake and invokes Rule 15(a)(2), is hereby construed as a motion to amend the complaint. (ECF No. 15, at 7.)

17-CV-02300-GPC-KSC

Corporation. (ECF No. 9.) Because the proper defendant has already appeared and has not been prejudiced by the Plaintiffs' technical pleading deficiency, the Court grants Plaintiffs leave to file an amended complaint identifying Roots Corporation as the defendant.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby **DENIES** Roots's Motion to Dismiss in Part and **GRANTS** the Motion in Part with leave to amend. If Plaintiffs choose to file an amended complaint (1) reflecting the correct defendant, and (2) addressing Roots's facial attack on jurisdiction with respect to Roots Of, they must do so no later than **Thirty Days** after this Order is docketed. The hearing date set for August 31, 2018 shall be **VACATED**.

**IT IS SO ORDERED**.

Dated: August 24, 2018

Hon. Gonzalo P. Curiel
United States District Judge